[Civ. No. 6751.   Third Dist.   Apr. 24, 1942.]

VERYL CALLISON, Respondent, v. CHARLES DONDERO, Appellant.

Nelson & Ricks and Howard P. Noyes for Appellant.

Edward J. Jose and Donald Drew for Respondent.

THOMPSON, Acting P. J.—The defendant, Charles Dondero, has appealed from a judgment of $1,981, which was rendered pursuant to the verdict of a jury, jointly against him and his co-defendant, D. K. Adams, as damages resulting from an automobile casualty. No appeal was perfected in behalf of the defendant, Adams.

It is contended the verdict and judgment are not supported by the evidence; that the appellant was free from negligence; that the plaintiff's driver of the truck which was involved in the accident was guilty of contributory negligence; that the conduct of Adams, who was the driver of a third automobile which was involved in the accident, was the intervening proximate cause of the collision, and that the court erred in giving to the jury an instruction based on the provisions of section 590 of the Vehicle Code, since the appellant's truck was not disabled, and the placing of warning signals on the highway, as therein provided, has no application to the circumstances of this case.

At five o'clock on the morning of February 27, 1940, a string of four trucks with attached trailers were traveling northerly along the Redwood Highway about five miles south of Garberville. It was dark and raining. The highway was practically level at that point. The paved portion was eighteen feet in width with an eight-foot shoulder on either side. On the western border of the highway there is a sharp descent to the South Fork of the Eel River, which parallels the highway in that vicinity. On the easterly side of the highway there is a steep bank which rises abruptly from the outer edge of the shoulder of the road. This bank is timbered. At the foot of this easterly

bank there is a shallow ditch which is maintained to drain the highway. From much rain the outer edge of the eastern shoulder was somewhat soft. There was no danger of running off the highway on the easterly side at this point on account of the presence of the high bank. At a distance of about 350 feet south of the place where the accident occurred, there is a sharp turn of the road toward the east, which completely obscures the view from approaching vehicles in that direction. Wallace Brown was driving the truck and trailer owned by the plaintiff, Veryl Callison. As these four trucks left Laytonville earlier in the night, Dondero's machine led the procession. Mr. Brown followed a short distance behind. The other two trucks followed with a reasonable distance intervening between their vehicles. Dondero saw the other trucks at Laytonville and talked with the drivers. He knew they were following closely behind his machine. His truck and trailer were equipped with headlights, red tail-lights, side green-lights and a spot-light. He also carried flame-pots, as required by law, to be placed on the highway as warning signals in case of an emergency.

The defendant, D. K. Adams, was traveling northerly in a sedan automobile, ahead of Dondero's truck. As the appellant drove around the curve in the road heretofore mentioned, he suddenly came upon Adams' car parked on the right-hand side of the paved portion of the roadway. He first observed his tail-lights. Dondero brought his truck and trailer to a stop on the easterly paved portion of the highway just behind the Adams car. His westerly wheels were within about ten inches of the center line. He turned on his spot-light and saw that the entire roadway was blocked by a slide which he observed at a distance of about 150 feet ahead of the Adams machine. Dondero knew the other trucks were following closely behind his machine. He had just turned the sharp angle in the roadway and knew it would obstruct the view of his parked car from a position beyond that turn of the road. He made no examination of the shoulder of the road to ascertain whether it was practicable for him to park his truck off the paved portion. He left his truck standing on the highway "within about 250 or 300 feet" from the acute angle in the road, and taking a flash-light he went forward to examine the slide and to talk with Adams. After some conversation, they decided to turn Adams' car about and return to get a crew of workmen to clear the highway. They maneuvered the car about and Mr. Adams drove it southerly on the westerly side of the highway until he reached a point opposite the front of Dondero's truck, where he

stopped the machine. His headlights were left burning. There was a space of less than five feet between the cars. While Dondero and Adams were talking at that point, the plaintiff's truck and trailer, driven by Brown, suddenly appeared around the bend in the road. It was traveling 25 or 30 miles an hour. Dondero claims that when he saw the glare of Brown's lights he ran down the highway, waving his flash-light. There is evidence that Dondero left his truck parked on the highway for about twenty minutes before Brown's truck appeared. Mr. Callison testified that Dondero told him "We hadn't been there over twenty minutes" before Brown's truck appeared.

Mr. Brown testified that when he came around the turn in the road he saw the headlights of Adams' car, but supposed it was a machine driving southerly on its proper side of the highway. He was at first blinded by those lights. Brown arrived at a point about 100 feet from the rear end of Dondero's trailer before he first discovered the parked truck and trailer ahead of his machine. About the same time he concluded that the machine which was facing him on the westerly side of the highway was stationary. He promptly applied his brakes, and turned slightly to his left, thinking he might pass between the vehicles. He immediately saw that was impossible and he then pulled sharply to his right to attempt to pass the parked truck on that side. It was impossible to stop his heavily-loaded truck in time to avoid the collision. His truck jack-knifed and struck the right rear portion of Dondero's trailer and it plunged off the highway on the shoulder and collided with the bank and an overhanging tree. The plaintiff's truck was badly damaged. Fortunately no one was seriously injured. Knowing that the other trucks would soon arrive, Dondero ran down the highway, waving his flash-light, and Adams drove forward, honking his horn. The two rear trucks managed to stop their machines without colliding with the stalled trucks.

This suit was brought by Veryl Callison against Dondero, Adams and the B. F. Goodrich Company. At the trial a nonsuit was granted with respect to the Goodrich Company. A verdict for damages in the sum of $1,981 was returned against Dondero and Adams jointly. Judgment was rendered accordingly. From that judgment, Charles Dondero, only, has appealed.

We are of the opinion the judgment is supported by the evidence. There is substantial proof that the appellant was guilty of negligence in parking his truck on the paved portion of

the highway on a dark and rainy night, at a point close to a sharp turn in the road which obscured the view from approaching vehicles, with knowledge on the part of the appellant that other machines were following closely and were likely to arrive at any moment; that he failed to examine the adjacent roadway to ascertain whether it was practicable to drive the truck on to the shoulder thereof and that he left the truck in that hazardous position for a period of about twenty minutes without taking any means of warning the approaching vehicles of the existing danger. It also appears that, under such circumstances, the appellant directed D. K. Adams, the driver of the automobile which was also parked ahead of his truck, to turn it about and return to procure a crew of workmen to help remove the obstruction from the highway, and that he spent several minutes engaging Adams in conversation while his automobile was parked, opposite the appellant's truck, with its headlights burning, so as to completely block the westerly side of the roadway. These facts furnish substantial proof upon which the jury was warranted in determining that the appellant was guilty of negligence which proximately contributed to the accident. At least, under such circumstances, we may not hold, as a matter of law, that the appellant was not guilty of negligence.

The jury was properly instructed, pursuant to the provisions of sections 582 and 583 of the Vehicle Code, that the driver of a machine which is not disabled shall not park his vehicle on the paved portion of the highway, and leave it unattended, when it is practicable for him to drive it off the paved portion, and that, in no event, shall the driver of a disabled vehicle leave it standing unattended on the highway unless at least fifteen feet of the paved portion is left unobstructed for the free passage of other vehicles.

Having shown that the appellant did park his truck on the paved portion of the highway, and leave it unattended for a period of time, contrary to the provisions of the foregoing sections of the code, the burden was on him to show that it was not practicable for him to drive his machine off the highway on the shoulder thereof, and that he was not otherwise guilty of negligence in violating the provisions of those sections of the code. (*Casey* v. *Gritsch*, 1 Cal. App. (2d) 206 [36 P. (2d) 696]; *Scoville* v. *Keglor*, 27 Cal. App. (2d) 17, 32 [80 P. (2d) 162]; 131 A. L. R. 603, note.)

Assuming that the appellant did not violate the pro-

visions of section 590 of the Vehicle Code by failing to place his flame-pots, or other warning signals on the highway, for the technical reason that his truck was not actually "disabled," the fact that he was supplied with such flame-pots and knew the other trucks were likely to arrive at any moment, and that he failed to use the flame-pots or otherwise warn the drivers of the approaching trucks, may, nevertheless, be properly considered in determining whether the appellant was not guilty of failure to exercise ordinary care, as distinguished from a violation of the statute. ▮ One may become liable for damages for failure to exercise ordinary care without actually violating the explicit provisions of a statute. The violation of a statute merely furnishes prima facie proof of negligence *per se,* which requires some evidence of rebuttal.

▮ Likewise, the question regarding the alleged contributory negligence of the plaintiff was a problem for the determination of the jury under the circumstances of this case. We are of the opinion the record fails to show that the driver of respondent's truck was guilty of contributory negligence. At least, we may not say, as a matter of law, that he was guilty of contributory negligence. We are therefore bound by the implied finding of the jury in that regard.

▮ Having determined there is ample evidence to sustain the finding of the jury that the appellant was guilty of negligence which proximately contributed to the damage sustained by the respondent, Mr. Dondero may not escape liability by the fact that the act of D. K. Adams, in completely blocking the westerly side of the highway, also contributed to the cause of the accident. Even though the acts of Dondero and Adams concurred in causing the accident, if Dondero's conduct was one of the proximate causes thereof, he may be held liable, either jointly with or separately from his co-tortfeasor. This is true even though the accident would not have happened except for the negligence of the third person. (*Cummings* v. *Kendall,* 34 Cal. App. (2d) 379 [93 P. (2d) 633].) In 4 Blashfield's Cyclopedia of Automobile Law, p. 49, sec. 22, it is said in that regard:

"If the negligence of defendant is one of the proximate causes of the injury of which the plaintiff complains, he cannot escape liability by showing that the negligence of a third person also contributed to the injury, and that the accident would not have happened but for such negligence of the third person."

The evidence in this case certainly does not show that the negligence of D. K. Adams was the sole cause of the accident. We are of the opinion there is an abundance of evidence to show concurrent negligence on the part of both the appellant and Adams, each of which proximately contributed to the accident. This renders the appellant liable.

It was not reversible error for the court to instruct the jury in the language of section 590 of the Vehicle Code, that a "disabled" truck, weighing four thousand pounds or more, may not park on the paved portion of a highway, outside of the limits of a city or town, without displaying either flares or red lanterns at about one hundred feet in advance of and behind the parked vehicle. We are disposed to agree with the appellant that the instruction was inapplicable since the truck was not disabled. It is argued by the respondent that the appellant's truck was disabled in the sense that it was prevented from going forward because of the presence of the slide which completely blocked the highway. We are of the opinion the word "disabled" is used, in section 590 of the Vehicle Code, to mean that a truck is mechanically defective when it is in a condition which prevents it from being operated on its own power, or when it is difficult to do so on that account. We assume a machine is not disabled merely because its progress is blocked by some obstruction of the highway. We concede the appellant was not guilty of negligence *per se*, for violating section 590 of the Vehicle Code merely because he failed to place the flares on the highway as a warning of danger. The court did not so instruct the jury. But he might, nevertheless, be guilty of a lack of ordinary care in failing to do so, under the circumstances of this case. And he might also be guilty of negligence *per se* in failing to drive his machine off the paved portion on to the shoulder of the highway, or in neglecting to leave fifteen feet of the highway unobstructed. It was the province of the jury to determine whether it was practicable or possible for him to do so.

Assuming that the challenged instruction was inapplicable, we conclude that it was not reversible error for the reason that it does not appear there was a miscarriage of justice in the present case.

The judgment is affirmed.

Tuttle, J., concurred.