[Civ. No. 2818.   Fourth Dist.   May 25, 1942.]

LOUIS K. THOMPSON et al., Respondents, v. EVELYN ROSE STEVESON, Appellant.

John Coker and Monroe & McInnis for Appellant.

Hervey & Holt and Henry F. Walker for Respondents.

MARKS, J.—This is an appeal from a judgment for damages suffered by plaintiffs in a motor vehicle collision at about 6:30 o'clock p. m., on May 26, 1939, on Highway 101, between Del Mar and Solano Beach in San Diego County.

It was stipulated at the trial that at and south of the point of collision there was a three-lane paved highway with an oiled shoulder about 8 feet wide on the east side and another about 20 or 30 feet wide on the west side of the pavement. At the opening of the trial the following stipulation was entered into as to the speed of plaintiffs' car and the speed of another car immediately preceding it which was following the car driven by defendant: "THE COURT: Any question of excessive speed? MR. COKER: No, your Honor, I think both cars, that is plaintiffs' car and the car immediately ahead of it were proceeding at a normal speed, perhaps forty to forty-five miles an hour."

While a number of the facts are admitted the evidence is sharply conflicting on other material points. Following the time-honored rule that conflicts in the evidence are settled in the trial court we will summarize the evidence tending to support the judgment and will disregard other evidence conflicting with it.

The place of the collision was "outside of a business or residence district." (§ 582, Veh. Code.) Defendant was driving north in the east traffic lane. She had her two children with her. Shortly before the collision the little boy sitting on the rear seat complained of being cold. Defendant told him to put on his sweater, but he could not find it. She brought her car to a gradual stop in order to assist the child. She did not drive off the pavement though perhaps the right wheels of her car were resting slightly off the pavement and on the oiled shoulder.

A car driven by Bernard Lemohn was following defendant's

car and was traveling in the east traffic lane. Plaintiffs' car, driven by Louis K. Thompson, with Edythe I. Thompson sitting on the front seat to his right, was following the Lemohn automobile and was also traveling in the east traffic lane.

Mr. Thompson clearly described the accident as follows:

"Q. And just tell us then what occurred. A. We were driving there at a comparatively slow rate of speed, and this car ahead of me very suddenly pulled to the left and passed me—not passed me, pulled ahead and passed the car ahead of him; and, I couldn't see, of course, while this other car—I couldn't notice too much what was ahead of him, and there all of a sudden was this other car stopped on the road. Q. Was that other car moving at all when you saw it? A. It was not moving. Q. What lane of the highway was that standing or parked car in? A. Directly in front of me, on the same lane which I was driving. Q. Did you see that car at all before the car immediately ahead of you pulled out to pass it? A. No, I didn't see it; I was watching my road in front of me. Q. And when this car pulled out and passed—when the car immediately ahead of you pulled out to the left and passed the standing car, what did you do? A. As soon as it flashed through my mind that that car was stopped I applied my brakes and tried to stop before I could hit her. Q. Were you able to bring your car to a stop before you hit? A. I was not. Q. Did you make an effort to turn to the left or to pass it? . . . A. I could not pass either to the left or to the right. The whole situation happened so quickly I didn't have a chance to turn out at all. BY THE COURT: Q. How far was the car ahead of you when you first observed it? A. That's when I applied my brakes. My judgment is I was about 40 or 45 feet. Q. The roadway is level there, isn't it? A. I think so."

Defendant urges the following ground for reversal of the judgment: (1) That the trial judge entertained an erroneous conception of the law applicable to the facts involved; (2) That any negligent act or omission on the part of defendant was not a proximate cause of the accident; (3) That Mr. Thompson was guilty of contributory negligence; (4) That his negligence was imputed to Edythe I. Thompson, his wife; (5) That the portion of the judgment of $8,012.50 in favor of Mrs. Thompson was excessive.

The first ground urged for reversal involves the other grounds and need not be separately considered.

In considering the question of proximate cause we should observe that the trial court found defendant guilty of two acts of negligence and that they were proximate causes of the collision. He found that Mrs. Steveson failed to give the proper arm signal signifying her intention to stop as required by section 544 of the Vehicle Code, and of violating the provisions of section 582 of the same code by stopping and leaving her car standing on the paved and main traveled portion of the highway when it was practicable to stop and leave it standing off from such portion of the highway by stopping it on the oiled shoulder to her right.

We need devote little attention to the question of the failure to give the proper signal. The evidence of Mr. Thompson, already quoted, indicates that his view of defendant's car was screened by the Lemohn car until it pulled into the center traffic lane, too late for Thompson to have avoided the collision. Under such circumstances the question of the failure of Mrs. Steveson to give a proper arm signal being a proximate cause of the accident might be open to serious argument. ▮ We regard this question unimportant as we must assume as a proven fact that she violated section 582 of the Vehicle Code when she stopped her car on the pavement when she could have stopped it off from the pavement on the shoulder of the highway. This violation of the statute constituted negligence on her part. The question of whether or not proven negligence is the proximate cause of an injury is usually one of fact addressed to the trier of fact. (*Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal. App. (2d) 674 [102 P. (2d) 422, 104 P. (2d) 26].) As the trial judge found that defendant's violation of the provisions of section 582 of the Vehicle Code was a proximate cause of the collision we cannot disturb that finding here. (*Mason* v. *Crawford*, 17 Cal. App. (2d) 529 [62 P. (2d) 420].) We cannot see how the trial judge could have reached a contrary conclusion under the testimony which we have quoted and which he accepted as true.

▮ We need give little attention to the argument that the evidence shows that Mr. Thompson was guilty of contributory negligence as a matter of law. Under the facts disclosed here the question of contributory negligence was one of fact addressed to the trial judge. His finding that there was no contributory negligence is conclusive here.

▮ Counsel presented an interesting argument on the question of the negligence of Mr. Thompson being imputed to his wife under the rule announced in *McFadden* v. *Santa Ana etc.*

*Ry. Co.,* 87 Cal. 464 [25 Pac. 681]. The argument arises from the fact that plaintiffs were tourists in California and were residents of a common-law state in which property may not be held in community. The arguments and authorities, while interesting, are strictly academic. As the trial judge found Mr. Thompson free from contributory negligence there was no negligence to be imputed to his wife.

The question of the judgment being excessive requires slight consideration. Mrs. Thompson was seriously cut and bruised in the accident. She was about 30 years old. Photographs taken of her before the accident show her to have been an attractive and good-looking young woman. Without particularizing other injuries and elements of damage, photographs taken after the accident show her face to have been badly scarred. Among about six facial scars the most disfiguring are, one on the right cheek running from near the nose to near the right ear, an indentation of the left side of the nose, one running from the left eye upward into the forehead.

Her appearance was subsequently improved by several plastic operations, but the evidence shows that she will carry scars as long as she lives. Mrs. Thompson was a witness in court and was observed by the trial judge. This is a form of evidence that cannot be reproduced in the record on appeal. He summed up what he observed and referred to six obvious facial scars. He said there was a difference in the contour of the two sides of her face; that "now, after a lapse of two years, that puffiness in the cheek, that deep scar and displacement, is noticeable at practically any distance. It is noticeable now, as she sits some 20 feet from the bench. It is very distinctly noticeable. Not only the discoloration, but the puffiness, the overlapping which plastic surgery has not yet eliminated or corrected."

Under the facts before us we cannot hold as a matter of law that the judgment is excessive.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 23, 1942.